UNITED STATES, Appellee,

v.

Private E2 Anthony E. SIMS, 527–49–0219, United States Army, Appellant.

ACMR 9002596.

U.S. Army Court of Military Review.

28 Aug. 1991.

As Amended 16 Sept. 1991.

For Appellant: Major Michael J. Kelleher, JAGC, Captain Holly K. Desmarais, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC, Captain Kenneth H. Goetzke, JAGC (on brief).

Before NAUGHTON, HOWELL, and JOHNSTON, Appellate Military Judges.

OPINION OF THE COURT

JOHNSTON, Judge:

Consistent with his plea, the appellant was convicted by a military judge sitting as

a general court-martial of a larceny of $665.00 from the checking account of another soldier by using a stolen automatic teller machine (ATM) bank card in violation of Article 121, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 921 (1982). The appellant was acquitted of an attempted larceny charge (Article 80, UCMJ, 10 U.S.C. § 880) based on his attempt to transfer funds using the same ATM card. The convening authority approved the adjudged sentence of confinement for thirteen months, forfeiture of all pay and allowances, reduction to Private E1, and a bad-conduct discharge.

Although the case was submitted by appellate defense counsel without any errors alleged, we specified an issue concerning the providence of the appellant's plea and the military judge's failure to order an inquiry into the appellant's mental responsibility at the time of the offense.[1] We conclude that under the facts of this case the appellant's plea was improvident. We further conclude that the military judge erred when he failed to refer the appellant for a mental evaluation under Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 706 [hereinafter R.C.M. 706].

### I.

The first notice to the military judge that the appellant had significant mental problems surfaced during cross examination on the merits of the attempted larceny charge:

Q. What was the—why did you take the other six hundred and sixty-five dollars?

A. Sir, I really don't know.

Q. Did you have any more debts?

A. No sir. I was going through a psychiatric time, dealing with something inside of me at that time, and I was doing a lot of things, sir, that weren't of me.

. . . .

Q. But you don't know why [you took the money]; is that correct?

A. Sir, as I said before, I was dealing with something inside of me. That's why I'm getting help now. And not only was I dealing with the thing with Sterk [i.e. the larceny/attempt charges], I was also going through things, sir, to where I was doing a lot of things that wasn't of me. I was doing things unintentionally and then realizing after I did it—it's—it's all there in my medical notes. Because before this trial even had come up I had been admitted to the psychiatric unit.

Additional information concerning the possibility that the appellant lacked mental responsibility at the time of the offense surfaced during the sentencing hearing. The appellant explained in an unsworn statement that he had a friend named Corporal Myers that no one else could see or hear. He also stated that he heard other voices that no one else could hear. The following exchange between the appellant and his counsel highlights the lack of mental responsibility issue.

Q. Why did you take Sterk's money?

A. Sir, when I took the money I was—I was talking to my psychiatrist of this, and I'm not trying to be funny or anything like that—I categorized myself as more or less of being like a incredible hulk.[2] In short, I'm a normal person and there's never a set time as to where my voices or my imaginary friend pops up, and then next it can be—it just pops up; it's on me. I don't have any control over it. And at that time I feel that I wasn't—and I had convinced myself that I had not did it when I was being confronted by MP's and by other superiors. I had not done it.

---

1. WHETHER THE MILITARY JUDGE ERRED BY FINDING THE APPELLANT'S PLEA OF GUILTY TO BE PROVIDENT AND FAILING TO ORDER AN INQUIRY INTO THE APPELLANT'S MENTAL RESPONSIBILITY AT THE TIME OF THE LARCENY OFFENSE. *SEE UNITED STATES V. HERALD,* 17 M.J. 1118 (N.M.C.M.R.1984).

2. We judicially note that the appellant apparently is referring to a popular television program and comic-book character of the era. The "incredible hulk" was an ordinary man who, under conditions of stress, *metamorphosed into* an uncontrollable creature that he could not influence.

....

Q. Are you willing to take whatever punishment that the court deems necessary to your case?

A. Sir, I don't have—I don't have much of a choice, 'cause I did the crime, sir, *but I wasn't aware of what I was doing* and that's why, like I said, I'm trying to get help now. [emphasis added]....

....

MJ. ... The last thing you said, Private Sims, was that you were not aware of what you were doing....

A. No, sir.

MJ. ... at the time you were doing it. Did you understand—my question, by pleading guilty what you've said is, "Yes, I know what I was doing and what I was doing was wrong." At the time you were doing it, did you realize what you were doing?

A. At the—Yes I did.

MJ. And did you understand that what you were doing at that time was wrong?

A. Yes.

MJ. Okay. So although you may not be aware now of why you were doing it, are you convinced at the time you were doing it you knew what you were doing was wrong and that it was a criminal act?

A. [Nodded head affirmatively.]

After a few additional questions to satisfy himself that the accused was mentally competent at the time of trial, the military judge announced the sentence.

## II.

■ Where an accused, during the guilty plea inquiry, or later in the court-martial proceedings, raises a matter inconsistent with his guilt, the military judge should conduct a further factual inquiry to resolve the matter. *United States v. Jemmings*, 1 M.J. 414 (C.M.A.1976). Moreover, if a potential defense is raised by an accused during his rendition of the factual

basis of his plea or by other matters, the military judge should explain the defense to the accused and should not accept the accused's plea of guilty unless the accused admits facts which negate the defense. Rule for Courts–Martial 910(e) discussion; *see United States v. Peterson*, 1 M.J. 972, 974 (N.C.M.R.1976) (military judge should have made inquiry where the accused raised defense of lack of mental responsibility).

Rule for Courts–Martial 916(k) specifies that it is an affirmative defense to any offense that, at the time of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts.

■ Further inquiry into the accused's mental condition on appeal is required when it appears warranted in the interest of justice, regardless of whether the question was raised at trial. *United States v. Williams*, 18 M.J. 533 (A.F.C.M.R.1984). In this case the responses by the appellant during cross-examination on the merits of the attempted larceny charge and during sentencing raise significant doubts about the appellant's mental responsibility at the time of the larceny offense and thus render appellant's plea improvident. *See United States v. Herald*, 17 M.J. 1118 (N.M.C.M.R.1984).

■ Rule for Courts–Martial 916(k)(3)(B) provides that "If a question is raised concerning the mental responsibility of the accused, the military judge shall rule finally whether to direct an inquiry under R.C.M. 706." This rule requires the military judge to order the inquiry or satisfy himself that the defense team has fully evaluated the possibility of the affirmative defense.[3] *See United States v. Babbidge*, 40 C.M.R. 39 (1969).

■ While the issue of mental responsibility is to be decided by the trier of fact in light of all the evidence on the issue, only those physicians, psychiatrists, and clinical psychologists listed in Rule for

---

**3.** A question to defense counsel might reveal that psychiatric examinations had been conducted, and the results were not sufficient to present a possible defense.

Courts–Martial 706(c)(1) may *initially* answer the specific questions in Rule for Courts–Martial 706(c)(2)(A–D) concerning mental responsibility at the time of the offense. *See United States v. Pettaway,* 24 M.J. 589 (N.M.C.M.R.1987), *petition denied,* 25 M.J. 483 (C.M.A.1987). Instead of ordering a mental examination by the appropriate mental health professionals, the military judge in this case sought to determine whether the accused thought his own mental condition kept him from appreciating the nature and quality or wrongfulness of his conduct. These questions should have been directed in the first instance to a psychiatrist rather than to the accused.

The various responses from the appellant during the merits of the case and sentencing indicate that a formal inquiry should have been ordered or that the military judge should have satisfied himself on the record that the defense had evaluated the possible use of the affirmative defense by obtaining the expert opinions of persons qualified under R.C.M. 706(c)(1). *United States v. Clark,* 28 M.J. 401, 407 (C.M.A.1989).

Accordingly, the findings of guilty and the sentence are set aside. The same or a different convening authority shall institute a sanity inquiry consistent with this decision.

If a sanity inquiry is not feasible, or if upon completion of the inquiry the convening authority is satisfied that the accused lacks, or lacked, mental responsibility, or believes for any other reason the prosecution should be terminated, the convening authority may dismiss the charge and specification, otherwise, a rehearing may be ordered.

Senior Judge NAUGHTON and Judge HOWELL concur.