# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Joshua W. USRY
### Seaman (E-3), U.S. Coast Guard

## CGCMG 0243

## Docket No. 1298

## August 5, 2009

General Court-Martial convened by Commander, Maintenance and Logistics Command Atlantic. Tried at Boston, Massachusetts, on 8 August 2007.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Jeffery S. Howard, USCG |
| Assistant Trial Counsel: | LT Michael R. Vaughn, USCG |
| Defense Counsel: | LTJG Eric S. Nelson, JAGC, USNR |
| Appellate Defense Counsel: | CDR Necia L. Chambliss, USCGR |
| Appellate Government Counsel: | LT Alfred J. Thompson, USCGR |
| | LT Emily P. Reuter, USCG |

## BEFORE
## McCLELLAND, LODGE & KENNEY
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of wrongful appropriation, in violation of Article 121, Uniform Code of Military Justice (UCMJ); and one specification of violating 18 U.S.C. 2252A by transporting child pornography in interstate or foreign commerce, one specification of violating 18 U.S.C. 2252A by receiving child pornography, and three specifications of violating 18 U.S.C. 2252A by possessing child pornography, all in violation of Article 134, UCMJ. The military judge sentenced Appellant to confinement for thirty-six months, reduction to E-1, forfeiture of all pay and allowances, and a bad-conduct discharge. The Convening Authority approved the sentence

as adjudged, but suspended confinement in excess of twenty-four months for twelve months. The pretrial agreement did not affect the sentence.

Before this Court, Appellant has assigned the following errors:

I.  The military judge erred by failing to order further inquiry into Appellant's competency to stand trial.

II.  Appellant was denied effective assistance of counsel when his attorney failed to request a second mental health examination pursuant to R.C.M. 706 to determine Appellant's competence to stand trial.

III.  The record of trial is neither verbatim nor complete because an equipment malfunction caused a substantial omission.

We heard oral argument on the first assigned error on 17 June 2009. Although it might be argued that the first assigned error was waived by failure to raise it at trial, we deem it worthy of consideration.[1] We reject all three assignments of error and affirm.

Shortly after the one-day trial began, before arraignment, the military judge recited on the record a number of pretrial events, including that trial had originally been scheduled for 10 July, that on 9 July he was notified that Appellant had attempted suicide earlier that day, that he had ordered an inquiry into Appellant's mental health under Rule for Courts-Martial (R.C.M.) 706, Manual for Courts-Martial, United States (2005 ed.), and that he was later informed that the inquiry showed Appellant competent to stand trial.[2] (R. at 11-12.) He also noted that Appellant had taken some medications shortly before trial, which might affect his ability to testify. At his request, Appellant described the medications and their effects on him:

DC: Seaman Usry, what are the two medications you're on today?

ACC: Seroquel and Celexa, sir.

DC: And what is the Celexa for?

ACC: Depression, sir.

---

[1] *See United States v. Lewis*, 34 M.J. 745, 751 (N.M.C.M.R. 1991).
[2] The report on Appellant's mental condition is Defense Exhibit D.

DC:  And the Seroquel, what is that for?

ACC:  It's for voices and to calm me down, sir.

DC:  Okay.  And what kind of impact might that have on your ability to think or remember events?

ACC:  It – it'll cut down on the voices and it'll – it affects my memory, it kind of makes me mellow out, sir.

DC:  But you're still able to – to think straight?

ACC:  As far as I know, sir, yes, sir.

DC:  Okay. Any – anything else with the medication that you think the court should be aware of?

ACC:  [CD Skips from 9:35:04 to 9:35:54 but the substance of the response is as follows  See Appellate Exhibit XII]  The medication sometimes makes me feel tired or sleepy.  I also sometimes have a dry mouth.  It also affects my ability to remember things.

DC:  To what extent?

ACC:  I might not remember some details of – of what happened, but I'll try as best as I can, sir.

DC:  Okay.  Any other questions, sir?

MJ:  No.  And, Seaman Usry, I understand from talking to your counsel earlier in a pretrial conference this morning that you were very anxious when you arrived here this morning, and that – and that's understandable since you're here for a court-martial, but that having taken the medication that you are feeling more comfortable now, at least a little bit more relaxed.  Is that correct?

ACC:  Yes, sir.

(R. at 14-15.)


The Appellate Exhibit XII referenced in the foregoing extract comprises three emails, the first from the military judge to all counsel memorializing a telephone conference under R.C.M. 802 at which a 50-second gap in the recording of the trial was discussed.  According to the military judge's email, he proposed text to fill the gap and counsel agreed.  In the two reply

emails of Appellate Exhibit XII, counsel for the two sides concur.  The above extract from the record faithfully reproduces the proposed text shown in Appellate Exhibit XII.

R.C.M. 1103(b)(2)(B) requires that a verbatim transcript be included in the record of a trial by general court-martial.  Insubstantial omissions from a record of trial do not affect its characterization as a verbatim transcript, but substantial omissions give rise to a presumption of prejudice.  *United States v. Lashley*, 14 M.J. 7, 8-9 (C.M.A. 1982).[3]

Appellant contends that the missing material was substantial because it "was critical to the military judge's determination of whether Appellant was competent to stand trial," and also would be considered by this Court in our review of that issue.[4]  (Appellant's Br. at 16-17.)

The missing words occurred during what amounts to a preparatory portion of the trial, following such basic matters as referral and service of charges, detailing and qualifications of counsel and the military judge, and Appellant's counsel rights, but preliminary to Appellant's choice of forum, assembly of the court, and arraignment.  We agree with Appellant that an accused's competence to stand trial is important; as Appellant points out, R.C.M. 909(a) provides that no person may be brought to trial if he is presently suffering from a mental disease or defect rendering him unable to cooperate intelligently in the defense of his case.  However, a decision on that competence is unlikely to turn on the precise words being spoken during a fifty-second period, as might be the case with a decision on guilt or innocence, or on sentence, with respect to a short piece of testimony.  The information imparted by Appellant as reflected "in substance" in the record did not suggest an overall incompetence,[5] but put the military judge on notice of potential impairments to come, during the essential parts of the trial.  The military

---

[3] Records have been found to be nonverbatim or incomplete when a summary of former testimony was admitted, *United States v. Douglas*, 1 M.J. 354 (C.M.A. 1976); when testimony was reconstructed, *United States v. Webb*, 23 USCMA 333, 49 C.M.R. 667 (1975) and *United States v. Boxdale*, 22 USCMA 414, 47 C.M.R. 351 (1973); when a bench conference concerning challenge of court members was omitted, *United States v. Sturdivant*, 1 M.J. 256 (C.M.A. 1976); when a bench conference involving a ruling on a defense objection to evidence on the merits was omitted, *United States v. Gray*, 7 M.J. 296 (C.M.A. 1979); when a prosecution exhibit on the merits was omitted, *United States v. McCullah*, 11 M.J. 234 (C.M.A. 1981); when defense exhibits on sentencing were omitted, *United States v. Stoffer*, 53 M.J. 26 (2000).  Insubstantial omissions were found when four prosecution exhibits were omitted but three similar prosecution exhibits were included, *United States v. Henry*, 53 M.J. 108 (C.A.A.F. 2000).

[4] Appellant calls the material testimony, but it preceded any oath being administered to Appellant.

[5] Appellant has offered no information in addition to or different from the "substance" in the record that might have been stated by Appellant at trial but omitted by the rendering in the record.

judge had opportunity to observe Appellant's functioning during the rest of the trial, which was both more important and more probative of Appellant's necessary competence. Similarly, we have opportunity to consider the responses he gave throughout the trial. Even if it happened that Appellant's actual words during the fifty-second gap tended to demonstrate some impairment, more important and probative were his words when participating in essential portions of the proceedings, specifically the providence inquiry and his unsworn statement. In short, we disagree with Appellant that the missing material was critical. We find the fifty-second non-verbatim segment to be an insubstantial omission from the record.

Appellant notes that the military judge must have believed Appellant competent because the trial proceeded, but he made no such explicit finding and did not indicate what he considered in reaching that conclusion. We agree with Appellant's implication that a military judge is responsible for stopping a proceeding if it comes to his attention that an accused is not competent to stand trial. R.C.M. 706(a) provides that in such an instance, the next step would be an inquiry into the mental condition of the accused. In this case, one inquiry had already been conducted. Nevertheless, "[a]dditional examinations may be directed under this rule at any stage of the proceedings as circumstances may require." R.C.M. 706(c)(4). Clearly the military judge was alert to any impairment of Appellant's mental condition that could affect his functioning at the trial. (*E.g.* R. at 13-14.) In the absence of an issue being raised by a party, he had no obligation to state any findings or otherwise express his thoughts on the matter. This brings us to Appellant's central contention: that the military judge erred by failing to order further inquiry into Appellant's competence to stand trial.

Mental competence to stand trial is a question of fact. R.C.M. 909(e)(1). A person is presumed competent unless the contrary is established. R.C.M. 909(b). Lack of mental competence must be established by a preponderance of the evidence. R.C.M. 909(e)(2). The military judge's determination on the question will be overturned only if it is clearly erroneous. *United States v. Proctor*, 37 M.J. 330, 336 (C.M.A. 1993). The military judge's decision whether to order additional inquiry into an accused's mental status is tested for abuse of discretion. *United States v. Collins*, 60 M.J. 261, 266 (C.A.A.F. 2004); *United States v. Carpenter*, 37 M.J. 291, 298 (C.M.A. 1993), *vacated on other grounds* 550 U.S. 1138 (1995).

**Manifestations at trial indicative of competence or incompetence**

Appellant first contends that the military judge should have obtained more reliable information about the effects of Appellant's medications than merely Appellant's own statement. The authority cited for this contention is *United States v. Sims*, 33 M.J. 684, 687 (A.C.M.R. 1991). Appellant acknowledges that the court in *Sims* was discussing mental responsibility, but asserts that the principle is the same here, where competence is at issue. We disagree that *Sims* applies here. Appellant provided information on the effects of his medications, toward the military judge's assessment of his ability to understand the proceedings and assist in his own defense. The military judge already had the report of the recently-conducted R.C.M. 706 board and was building on that foundation. This is a very different situation from determining an accused's understanding of his own mental responsibility, for the purpose of eliminating a potential mental responsibility defense in a guilty plea providence inquiry, when that accused had never been examined by mental health professionals, as in *Sims*.

We reject the notion that there is a requirement to obtain evidence from a medical expert about the effects of medications being taken by an accused, in order to assess that accused's competence to stand trial. If the existing evidence supports a finding of competence, the absence of expert testimony about the medications is of no moment. We find that Appellant's responses to the military judge regarding the medications, combined with his demonstrated understanding of the charges against him and active involvement in the court-martial, provide ample evidence that the medications had no detrimental effect on Appellant's competence.

Next, Appellant contends that his taking a nap during a break in the proceedings strongly indicated that something was amiss and should have triggered further inquiry by the military judge. Even in combination with his crying (R. at 52, 188, 189), we see nothing about the nap that would suggest incapacity to stand trial.

Appellant points out evidence that Appellant had auditory hallucinations. As noted above, one of his medications was "for voices," whose effect was to "cut down on the voices." (R. at 14-15.) One might infer from this that Appellant experienced voices during the trial,

which might interfere with his ability to cooperate in his defense, but there is no indication in the record of such voices or of unidentified distractions during the trial, and Appellant has not called our attention to any such incidents. The mere fact that Appellant was subject to hearing voices does not establish that he was incompetent to stand trial.

As we have already stated, the military judge had opportunity to observe Appellant's functioning during the entire trial. It is clear that he was attentive to Appellant's functioning and any potential difficulties therein. At the same time, Appellant's responses to the military judge and his unsworn statement demonstrate that he was engaged in the process and coherent. We see no signs that call into question Appellant's competence in the course of the trial.

Appellant also calls attention to evidence that his plea was influenced by his mental disorder, contrasting his case to *United States v. Shaw*, 64 M.J. 460, 462-63 (C.A.A.F. 2007), as well as evidence that he had a history of saying things contrary to the truth and to his own interests because of his desire to please. He asserts that this evidence placed on the military judge a duty to further inquire into his mental capacity. We will return to this argument. For the moment, we observe that Appellant's behavior and responses at trial did not indicate a need for further inquiry on that basis.

Considering the events of the entire trial taken together, we do not see any reason why the military judge should have sought further inquiry into Appellant's competency to stand trial.

**Asserted flaws in R.C.M. 706 inquiry**

Appellant contends that the inquiry under R.C.M. 706 that had been conducted prior to trial was flawed. This Court expressed particular interest in this theory in our order for oral argument, and in response, at oral argument Appellant listed several ways in which the process was flawed: the military judge failed to include in his order for R.C.M. 706 inquiry the reasons for ordering the mental examination, as required by R.C.M. 706(c)(2); the Government failed to provide the "complete medical record" to the board in accordance with the military judge's order, in that the records of Appellant's hospitalization following his suicide attempt were not included, and the report of the board is unreliable because the board did not examine the records

of the hospitalization; the report of the board is internally inconsistent; and the report included information that should not have been included, to wit, Appellant's feeling of guilt.[6]

The chronology concerning the R.C.M. 706 inquiry is as follows. Appellant attempted suicide on 9 July 2007. (R. at 11.) He was hospitalized the same day and remained hospitalized in or near Boston until the date of trial, except for brief interludes including his examination by the board at Groton, Connecticut on 1 August 2007.[7] (Appellate Ex. V, R. at 13, Defense Ex. D.) The order for R.C.M. 706 inquiry was issued on 13 July 2007, upon motion of the same date. (Appellate Ex. V & VI.)

The technical flaw in the military judge's order in failing to include in the order the reasons for the examination does not concern us. We infer from the order, Appellate Exhibit VI, that the military judge issued the order based on Appellant's motion, Appellate Exhibit V, which was unopposed. The motion merely stated that Defense Counsel questioned Appellant's capacity to stand trial and mental responsibility based on statements from Appellant and from treating mental health professionals (records of which presumably were found in Appellant's medical record), and pointed out the suicide attempt and ensuing hospitalization. It is clear from the report of the board, Defense Exhibit D, that the board was aware of the suicide attempt and hospitalization; the rest of the basis for the order was nonspecific and added nothing to inform the board's ultimate responsibility to assess Appellant's mental responsibility and capacity.

Assuming that the hospitalization records should have been in Appellant's medical record when it was provided to the board,[8] their absence is another technical flaw. The real issue, raised in Appellant's Assignment of Errors and Brief as well as at oral argument, is whether the report

---

[6] We deem the last asserted flaw, if it be a flaw, insignificant and harmless. Appellant's feeling of guilt is recorded more explicitly in Defense Exhibit C.

[7] Appellant was released from the hospital at one point, but was re-hospitalized after about a day. (R. at 120.)

[8] The "complete medical record" specified in the military judge's order is not defined. Surely it means at least the Coast Guard health record. The Coast Guard Medical Manual, COMDTINST M6000.1C, provides, "All health care received at other than a CG Clinic shall be recorded in the Coast Guard health record," paragraph 2.A.1.e, but it does not say in what form or how soon after being received such health care should be recorded. It appears that inpatient records are not transferred to the Coast Guard health record, paragraph 4.F.2, and, likewise, mental health records are not necessarily placed in the Coast Guard health record, paragraph 4.G.4. Still, the "complete medical record" arguably should include something from the hospitalization.

of the board is reliable given that the board did not examine records of Appellant's recent hospitalization and some records from his visits to other mental health professionals.

To address this issue, we must examine the evidence from the various mental health practitioners who saw Appellant. The record contains testimony from Ms. Judith Bergson, a licensed psychiatric social worker to whom Appellant was referred by the Coast Guard's Employee Assistance Program, and who saw Appellant twice a week beginning 31 January 2007 until his suicide attempt and three times afterward. (R. at 152-53.) Appellant had been interviewed concerning incidents underlying the charges against him by Coast Guard Investigative Service on 25 January 2007. (R. at 137.) According to Ms. Bergson, she coordinated his treatment with Dr. Rodriguez at the Coast Guard base, who prescribed medications for Appellant based on Ms. Bergson's recommendations. (R. at 155.) Ms. Bergson diagnosed Appellant with Attention Deficit Disorder of a type characterized by impulsiveness; severe depression, severe anxiety disorder, and panic disorder. (R. at 154-55, 179.) She testified that he reported auditory hallucinations while in the hospital on 28 July 2007, leading to the prescription for Seroquel, and when she saw him for the last time the following week, he said the voices had been reduced. (R. at 156.)[9]

Ms. Bergson also described Appellant as typically agreeing with suggestions as to his motivations because he wants to please people and that he may have made damaging admissions to please an investigator. (R. at 157, 165, 171.)

The record contains Defense Exhibit C, a single page dated 24 July 2007 from Dr. Anthony Raynes, physician/psychiatrist at The Arbour, where Appellant was hospitalized at the time. Dr. Raynes "was asked to see [Appellant] concerning his safety after discharge." He does not record a diagnosis, but notes Appellant's history of impulsive behavior, his current depressed affect and mood, and lack of evidence of psychosis or cognitive impairment; he states that Appellant "does represent a serious suicide risk."

---

[9] She also testified that he knew the voice was himself. (R. at 179.)

The report of the R.C.M. 706 board, Defense Exhibit D, records diagnoses of bipolar disorder, panic disorder, anxiety disorder, chronic posttraumatic stress disorder, and attention deficit disorder, predominantly inattentive subtype. It states that he is suffering from severe depression and is at significant risk for suicide. The report acknowledges that its findings "were made without access to all of the member's mental health records, including documentation relating to his recent inpatient psychiatric hospitalization. . . . Nevertheless, the Board is confident of their findings and does not feel that possession of knowledge of the contents of the other treatment records would alter their findings."

The report goes on to note "that the member's severe depression may have influenced him to accept a plea bargain or plead guilty because of his hopelessness. Nevertheless, he is deemed mentally competent to consider his legal options, to cooperate in his defense, and to understand the legal proceedings." It is this sequence that Appellant calls internally inconsistent.

One more mental health professional is represented in the record. Defense Exhibit B is a letter to the military judge dated 7 July 2007 from Dr. Jodie Shapiro, a forensic psychologist with New England Forensic Associates. According to the letter, New England Forensic Associates conducted a comprehensive psychosexual evaluation of Appellant. Appellant "presented with an array of psychological problems to include significant symptoms of a mood disorder with both depressive and anxiety features," reporting extended depression, suicidal thoughts, panic attacks, auditory hallucinations and "idiosyncratic thought patterns." Dr. Shapiro had spoken with Ms. Bergson and was aware of Appellant's medications. Dr. Shapiro also noted "overly compliant and dependent personality characteristics" in Appellant.

As noted, the board's report reflects that the board did not have access to the hospitalization records. Appellant asserts that the board may not have known about Dr. Shapiro and may not have had the benefit of records from Ms. Bergson.

We have found no comprehensive standards in military case law for evaluating the quality and reliability of reports required under R.C.M. 706. It is reasonable to hope that "doctors serving on an R.C.M. 706 board would not only be granted access to an appellant's

prior medical records, including previous diagnoses by other doctors, but would be encouraged to read those prior records to develop a full picture of an appellant's mental history." *United States v. Best*, 61 M.J. 376, 382 (C.A.A.F. 2005).[10] However, that desirable state of affairs is surely not a requirement without which a board's report is *per se* unreliable. We are not willing to label the report in this case unreliable merely because there were records that the R.C.M. 706 board did not examine.

Moreover, if an R.C.M. 706 board's report is flawed in some degree, neither a new report nor a new inquiry is necessarily required, because the board's conclusion is not determinative. The military judge is ultimately responsible for the determination of an accused's competence to stand trial. If an R.C.M. 706 board concludes that an accused is incompetent to stand trial, the board's conclusion is not the end of the matter. The military judge must conduct a hearing to determine the accused's competence. R.C.M. 909(d). If the board concludes the accused is competent, the military judge likewise retains responsibility to determine the accused's competence (as Appellant points out in his Assignment of Errors and Brief). R.C.M. 706(b); *United States v. Collins*, 60 M.J. 261, 266 (C.A.A.F. 2004). Even if there is significant information that was not considered by the board, this does not mean the board's report cannot be considered at all by the military judge. If the board in this case lacked some significant information, it remained within the military judge's discretion to determine whether further inquiry was needed. Surely there is no requirement for new or further inquiry unless there is reason to believe the unexamined records would have made a difference to the board's conclusions. Since we do not know what was in any missing records, and given the presumption of competence,[11] we will not speculate that they might have made a difference.[12]

---

[10] *See also* COMDTINST M6000.1C, Medical Manual, paragraph. 4-G-3: Psychiatric evaluation format. The psychiatric evaluation shall include, at a minimum: patient information, chief complaint, *history of present illness, past history (psychiatric symptoms, diagnoses, and care,* medical illness, surgeries, *current medications*, allergies, alcohol and drug history), personal history, family history, mental status exam, assessment (DSM-IV), prognosis, and plan. Included in all assessments and other visits as appropriate will be an estimation for harm to self or others. In addition, notes should contain sufficient information to establish that the criteria for any new DSM based diagnosis are met. (Emphasis added).

[11] R.C.M. 909(b), as previously noted.

[12] At oral argument, Appellant's counsel acknowledged that she had access to the hospitalization records. We invited submission of them by way of a motion to attach if counsel believed they might help Appellant's cause. No such motion was received.

When we compare the reports from the four sources of mental health information in the record, there is considerable agreement among them. The only significant difference we discern is that Ms. Bergson and Dr. Shapiro both mention auditory hallucinations while the board report and Dr. Raynes's single-page statement do not.[13] We assume for the purpose of this analysis that the board did not know about Appellant's voices.[14]

At oral argument, Appellant cited *United States v. Johnson*, 65 M.J. 919 (C.G.Ct.Crim.App. 2008), for the importance of Appellant's voices. However, the voices in *Johnson*, a mental responsibility case, were mentioned in conjunction with testimony that the appellant in that case "had a schizophrenic piece to him" that could sometimes impair his ability to distinguish between right and wrong. *Id.* at 925 (internal quotations omitted). This has very limited application to the instant competence case.

In this case, the military judge knew about Appellant's hallucinations from Ms. Bergson's testimony as well as from Appellant himself. He had the opportunity to consider whether the hallucinations required further inquiry under R.C.M. 706. As previously noted, there is no indication that Appellant experienced voices or other psychotic symptoms during the trial. In our view, the facts in the record concerning auditory hallucinations do not impeach the military judge's discretion.[15]

Dr. Shapiro's letter is a preliminary summary, not a full report on the evaluation she conducted. Appellant urges that Dr. Shapiro's absent information was critical to the

---

[13] Indeed, Dr. Raynes says, "There is no evidence of psychosis or of cognitive impairment." Hallucinations are psychotic symptoms. (R. at 156.)

[14] Our analysis of this issue is affected by the absence of evidence on exactly what was provided to and considered by the R.C.M. 706 board as "accused's medical record." While the medical record need not have been attached to the record as an appellate exhibit, some effort to provide it to this court via motion to attach when the issue was raised might have been useful to full analysis of the issues. We intend no criticism of Appellant's counsel, who presumably investigated the possibility that evidence on what was provided to the board might have redounded to the benefit of Appellant.

[15] Appellant contended at oral argument that the military judge has a responsibility to order further inquiry if there is a significant question about an accused's competence. We have already noted the lack of standards for evaluating the quality and reliability of R.C.M. 706 reports. Likewise, exactly what quantum of evidence not considered by the R.C.M. 706 board would require further inquiry after an R.C.M. 706 inquiry has been conducted, that is, what quantum would render a judge's failure to order further inquiry an abuse of discretion, is difficult to define. On this record, we are certain that Appellant's auditory hallucinations and other information asserted to be significant yet not considered by the R.C.M. 706 board were not enough to require further inquiry.

determination of Appellant's competence to stand trial because she performed tests that no one else had done and her insight and findings would be unique. However, according to her letter, Defense Exhibit B, she is a forensic psychologist; New England Forensic Associates was engaged to conduct a psychosexual evaluation, and she proceeded accordingly. Such an evaluation was no doubt relevant to the child pornography charges against Appellant. There is no reason to believe the unique insights gained by Dr. Shapiro's evaluation would shed light on Appellant's competence to stand trial. For this reason, Appellant's motion to order the Government to produce (by paying for) "the report generated by Dr. Shapiro of the New England Forensic Associates" is denied.[16]

We are convinced that the absence of Appellant's hospitalization records, information from Dr. Shapiro, and whatever else was not fully reflected in the medical records provided to the R.C.M. 706 board did not require the military judge to order further inquiry.

### Influence of mental illness on plea

Finally, Appellant asserts that his mental conditions caused him to be "overly compliant" and willing to say whatever he believed his audience wanted to hear, putting into question the voluntariness of his plea. He further raises the question of whether he can be considered competent if his plea was the product of his mental illness, inasmuch as the R.C.M. 706 board stated that hopelessness induced by his severe depression may have influenced him to plead guilty. Appellant calls this statement inconsistent with the board's finding of mental competence. This argument suggests that clinical depression-induced hopelessness *per se* vitiates competence to stand trial. We know of no supporting case law[17] and we see no reason to credit this line of logic. The providence inquiry, which allows a guilty plea to stand only if the accused believes and admits all elements establishing his or her guilt and there is a factual basis for the plea, is a powerful tool preventing "overly compliant" or clinically depressed persons

---

[16] To the extent the report would bear upon the sentence, its production was waived.

[17] *Shaw,* 46 M.J. at 462, cited by Appellant, is faintly suggestive, but it is a mental responsibility case, and since it is a negative example, where "there was no factual record developed during or after the trial . . . indicating whether and how bipolar disorder may have influenced his plea," it is far from establishing that influence on the plea is a determinant of anything.

from unjustly victimizing themselves by pleading guilty.

In this case, in addition to conducting a thorough providence inquiry, the military judge took extra precautions to ensure that it was not Appellant's depressed state of mind or eagerness to please that drove him to plead guilty. At the beginning of the trial, he told Appellant, "I want you to be able to speak to me honestly and truthfully throughout the proceedings." (R. at 16.) Per the trial guide, when Prosecution Exhibit 1, a stipulation of fact, was first offered, he told Appellant that if it were contradicted at any point in the trial, he would ask questions, and continued, "Therefore, you should tell me now if there is anything in the stipulation that you disagree with or believe is not true." (R. at 29.) Going beyond the trial guide, he reinforced the encouragement to bring out the truth, saying a little later, "And, again, at any point, as we talk about what's in this stipulation, if there's something you don't believe is correct or doesn't accurately reflect what happened, let me know, okay?" (R. at 30.) Appellant acknowledged each of these encouragements.

The encouragement by the military judge appeared to be effective, for Appellant explained the facts underlying Charge II Specification 1 beyond the stipulation of fact (R. at 50-51), leading the military judge to make findings by exceptions and substitutions on that specification. Appellant also offered clarification concerning the Specification under Charge I. (R. at 78.) Furthermore, he contradicted the stipulation of fact as to his intention to use pornographic images for his own sexual gratification. (R. at 66, 74, 77, 85, 86, 93, 94.) This assertive behavior effectively refutes Appellant's position before us that "it is not at all clear that the judge's reassurances were enough to overcome Appellant's deep-seated mental condition". (Appellant's brief at 7.)

At the end of the providence inquiry, the military judge addressed the "possibility that [Appellant's] depression caused [him] to enter into this Pretrial Agreement," and elicited Appellant's agreement that he was not forced into it by his mental state. (R. at 116-17.) Similarly, after Appellant's unsworn statement, the military judge addressed Ms. Bergson's testimony and Appellant's reference to the idea that he may have made statements that he thought his listener wanted to hear. Appellant assured the military judge that he had told the

truth during the providence inquiry and had not said anything just because he thought the judge wanted to hear it. (R. at 192-93.)

## Conclusions

Taking into account both events at trial and the asserted flaws in the R.C.M. 706 inquiry, we find that the military judge did not abuse his discretion in not seeking further inquiry under R.C.M. 706. His determination, albeit unstated, that Appellant was competent to stand trial was not clearly erroneous.

For the same reasons, Appellant was not denied effective assistance of counsel when his attorney did not raise these issues at trial.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges Lodge and Kenney concur.



For the Court,


Ryan M. Gray
Clerk of the Court