OPINION OF THE COURT
MERCK, Senior Judge:*
A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of possession of marijuana, indecent exposure (two specifications), and indecent acts (two specifications), in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for ten months, forfeiture of $767.00 pay per month for ten months, and reduction to Private El. Pursuant to a pretrial agreement, the convening authority approved only so much of the adjudged sentence as provides for a bad-conduct discharge, confinement for 180 days, forfeiture of $767.00 pay per month for ten months, and reduction to Private El.
The ease is before us for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. We have considered the record of trial, appellant’s assignments of error, the matters personally raised by appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), and the government’s reply thereto. We heard oral argument on 7 September 2005. Appellant asserts, inter alia, that his plea to both specifications of indecent exposure and to indecent acts was improvident because the military judge failed to address the defense of lack of mental responsibility that appellant asserts was raised in the providence inquiry. We find no basis for relief, but the issue warrants discussion.
FACTS
During the providence inquiry, appellant testified under oath and by means of a stipulation of fact to the circumstances surrounding his plea of guilty to indecent exposure and indecent acts. He told the military judge that he was stationed at Fort Hood, Texas, and on 8 January 2003, he went into the toy department of a Target department store, pulled out his penis, and masturbated. He then went to the cosmetics aisle of the store, exposed his penis, and masturbated until he ejaculated. Afterward, he rubbed his semen into the carpet with his foot and wiped his hands on the wall and a piece of clothing from a nearby cart. He was subsequently arrested and jailed until the next morning.
In early February 2003, appellant entered the main post exchange (PX) on Fort Hood, exposed his penis, and masturbated in the cigarette aisle. A security guard attempted to detain appellant, but appellant ran away. The next morning, appellant returned to the same PX, again exposed his penis, and masturbated. A security guard again tried to detain appellant, but he ran away. This time, some soldiers chased after appellant and caught him.
On 29 March 2003, a few days before his court-martial, appellant went into a K-Mart department store in Killeen, Texas, where he rubbed his genitals and masturbated. Appellant said that, while he was masturbating, he stood close to a woman shopping in the store because he wanted her to see him. The woman reported the incident and appellant was detained by the Killeen Police Department. Later the same day, appellant went to a Wal-Mart store, approached a woman, and, while standing close to her and smiling, exposed his penis and masturbated. Local police came to the store and arrested appellant.
Several times during the providence inquiry, the record reflects that appellant laughed when answering the military judge’s questions. At one point, he laughed nervously and muttered, “Oh God, Oh God.” He also cried. During his unsworn statement, appellant told the military judge that he was seeking “psychiatric therapy” and that he was “taking medication” which made him “feel a lot better.”
During the defense sentencing case, defense counsel introduced a memorandum, *676 dated 12 March 2003, detailing the results of a psychiatric evaluation conducted on appellant beginning 11 February 2003. The evaluation was signed by Captain (CPT) Christopher Lange, a psychiatrist, and listed as appellant’s diagnosis “Polysubstance Dependence” and “Exhibitionism.” Among the findings detailed in the memorandum were that appellant “was and is mentally sound and able to appreciate any wrongfulness in [his] conduct and to conform [his] conduct to the requirements of the law. [He had] the mental capacity to understand and participate in board or other administrative proceedings.” During the sentencing argument, defense counsel argued that appellant “knows he’s got a problem.” Defense counsel stated:
If there’s anything that shows that these were mental problem[s] more than anything is that he committed these offenses again knowing that he was facing a court-martial. He said he’s gone to a psychiatrist and he’s starting to take medication. I submit to you that he couldn’t stop. And whether that’s an excuse, which it isn’t; I just want you to think about that or at least know that he didn’t purposely do that to add more charges to this.... He did that because he couldn’t stop at that point. Now I’m not a mental expert, Your Honor. I’m not a person who really understands a whole bunch of things on what psychiatrists do but if he’s on medication now and it looks like it’s helping him that’s great.
LAW
“No person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him ... mentally incompetent to the extent that he ... is unable to understand the nature of the proceedings ... or to conduct or cooperate intelligently in the defense.... ” Rule for Courts-Martial [hereinafter R.C.M.] 909(a). Lack of mental responsibility, on the other hand, is “an affirmative defense in a trial by court-martial [if], at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts.” UCMJ art. 50a, 10 U.S.C. § 850a.[1] An accused is presumed to have been mentally responsible for his offenses and to have the mental capacity to stand trial. United States v. Estes, 62 M.J. 544, 548 (Army Ct.Crim.App.2005). However, facts may arise which call these presumptions into question. See id. at 548^9 (discussing the burdens of proof for issues of mental competence and mental responsibility).
When either the mental responsibility or mental capacity of an accused is an issue, it must be addressed in the first instance through a mental examination conducted by a board of mental health experts. Rule for Courts-Martial 706 describes when such an inquiry is necessary, stating:
If it appears to any commander who considers the disposition of charges, or to any investigating officer, trial counsel, defense counsel, military judge, or member that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial, that fact and the basis of the belief or observation shall be transmitted through appropriate channels to the officer authorized to order an inquiry into the mental condition of the accused.
The purpose of R.C.M. 706 “is to provide for the detection of mental disorders not ... readily apparent to the eye of the layman.” United States v. Jancarek, 22 M.J. 600, 603 (A.C.M.R.1986) (internal quotations omitted).[2] The findings of an inquiry conducted *677 pursuant to R.C.M. 706 do not resolve the issue, but provide information for the final decision maker. See R.C.M. 909(c)-(e); R.C.M. 916(k).
The issue of mental capacity is an interlocutory question of fact which is finally resolved by either the convening authority before referral or the military judge after referral. R.C.M. 909(c)-(e). If an R.C.M. 706 inquiry conducted before referral determines that an accused is not competent to stand trial, the government may either commit the accused to the custody of the Attorney General or continue to trial. R.C.M. 909(c). If charges are referred and an R.C.M. 706 board makes such findings, the military judge will conduct a hearing to determine the mental capacity of the accused. R.C.M. 909(d). If the defense establishes by a preponderance of the evidence that the accused is not mentally competent, the accused will be committed to the custody of the Attorney General and trial cannot continue unless and until the accused becomes competent. R.C.M. 909(e) and (f).
Conversely, the issue of mental responsibility is not an interlocutory question and must be finally determined by the finder of fact. R.C.M. 916(k)(3)(C). Thus, if an R.C.M. 706 inquiry determines that an accused was not mentally responsible for the offenses, an accused must still prove this fact in a contested ease by clear and convincing evidence in order to be entitled to the defense. R.C.M. 916(k)(3)(A). If the accused pleads guilty and the defense of lack of mental responsibility is raised, the military judge must resolve the issue through discussions with the accused prior to accepting the plea, regardless of whether mental health experts have previously determined that the accused was mentally responsible for his offenses. See United States v. Harris, 61 M.J. 391, 398 (C.A.A.F.2005). Our superior court has made clear that a military judge’s responsibility under Article 45, UCMJ, 10 U.S.G. § 845, “includes the duty to explain to a military accused possible defenses that might be raised as a result of his guilty-plea responses.” United States v. Smith, 44 M.J. 387, 392 (C.A.A.F.1996). See also United States v. Jemmings, 1 M.J. 414, 418 (C.M.A.1976); R.C.M. 910(e) discussion.
DISCUSSION
There are two potential issues related to appellant’s mental condition that must be addressed in this case. The first is whether the military judge should have sua sponte ordered an inquiry into appellant’s mental capacity and mental responsibility pursuant to R.C.M. 706. The second is whether appellant’s plea of guilty was improvident because the military judge failed to explain the defense of lack of mental responsibility to, and discuss it with, appellant. Because of the reasons stated below, we answer both questions in the negative.

R.C.M. 706

If the need for an inquiry under R.C.M. 706 is apparent, “only those physicians, psychiatrists, and clinical psychologists listed in Rule for Courts-Martial 706(c)(1) may initially answer the specific questions in [R.C.M.] 706(c)(2)(A-D) concerning mental responsibility at the time of the offense.” United States v. Sims, 33 M.J. 684, 686-87 (A.C.M.R.1991). It is insufficient to merely ask an accused his opinion as to whether the accused thought his own mental condition kept him from appreciating the nature and quality of wrongfulness of his conduct. Id. at 687.
*678 Appellate defense counsel assert that appellant’s behavior during the providence inquiry, including laughing at several points, crying, and muttering, are yet another indication of his mental issues. While we acknowledge that these notations in the transcript are out of the ordinary, the military judge categorized appellant’s behavior as nervousness. None of the parties who were present at the trial, including appellant’s defense counsel, disagreed with this characterization or made any further record or issue of appellant’s behavior.
Based on an evaluation of the record as a whole, we do not believe that there was a necessity for an R.C.M. 706 inquiry to be conducted in this case.
Significantly, the defense did not request any further inquiry after appellant had undergone a psychiatric evaluation that determined that he did not have a serious mental disease or defect and that he was competent to understand the proceedings against him. A qualified mental health professional conducted the evaluation and answered the questions mandated by R.C.M. 706. See Janearek, 22 M.J. at 603-604. None of the participants in the trial thought any further evaluation was necessary and we find no evidence to dispute this conclusion. We decline to interpret appellant’s conduct as “reason to believe” appellant lacked mental responsibility for his offenses or the capacity to stand trial, particularly when those viewing appellant in person apparently did not. See R.C.M. 706(a).

Providence of Pleas

The standard of review to determine whether a guilty plea is provident is if the record reveals a substantial basis in law and fact for questioning the plea. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F.2002) (citing United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991)). In this case, appellant asserts that his pleas of guilty to indecent exposure and indecent acts were improvident because appellant’s “guilty plea responses raised a question as to [appellant’s] sanity at the time of the offenses and the military judge did not inquire into the affirmative defense of mental responsibility.”
There are several references to appellant’s mental health issues throughout the record of trial. During his unsworn statement, appellant said that he was seeking “psychiatric therapy” and taking medication which was working and allowing him to feel “a lot better.” The psychiatric evaluation submitted by the defense diagnosed appellant with polysubstance dependence and exhibitionism. Appellant’s trial defense counsel argued during the defense sentencing argument that appellant suffered from a “mental problem” and that he “couldn’t stop” what he was doing. These statements, coupled with the bizarre nature of the crimes themselves, were enough to indicate that appellant was suffering from some sort of mental problem.
However, looking at the trial as a whole, we find that the military judge was not required to inquire into the possible defense of lack of mental responsibility. We find nothing to indicate that appellant was suffering from a severe mental disease or defect. We decline to conclude that any reference to psychiatric treatment or problems, no matter how vague or oblique, is sufficient to create a substantial basis for questioning a guilty plea. Cf. United States v. Estes, 62 M.J. 544, 549-50 (Army Ct.Crim.App.2005).
This case is distinguishable from United States v. Harris, where both the military judge and a post-trial R.C.M. 706 board concluded that the accused suffered from a severe mental disease or defect. Harris, 61 M.J. at 391-98. The military judge, however, did not discuss the possible defense of lack of mental responsibility with the accused. Id. at 398. Based on these facts, our superior court held that the guilty pleas were improvident. In this case, however, CPT Lange concluded that appellant “was and is mentally sound and able to appreciate any wrongfulness in [his] conduct and to conform [his] conduct to the requirements of the law.” Therefore, unlike the conclusions of the sanity board in Harris, CPT Lange’s conclusion is not inconsistent with appellant’s guilty pleas.[3]
*679 Accordingly, the findings of guilty and the sentence are affirmed.
Judge JOHNSON and Judge OLMSCHEID concur.

 Senior Judge Merck took final action in this case prior to his retirement.

. Mental responsibility and mental competency are two distinct issues. "Mental responsibility refers to a person's mental condition at the time an offense was committed and criminal responsibility for that offense. Competency to stand trial, on the other hand, deals with a soldier’s mental condition at the time of trial and his ability to assist in his own defense.” Lieutenant Colonel (now Colonel (COL)) Donna M. Wright, "Though This Be Madness, Yet There is Method In It": A Practitioner’s Guide to Mental Responsibility and Competency to Stand Trial, ARMY LAW., Sept. 1997 at 18. We commend COL Wright's article to all trial practitioners for an excellent discussion of the practicalities of litigating these issues in courts-martial.

. When such an inquiry is ordered, it will be conducted by a board composed of "one or more *677 persons. Each member of the board shall be either a physician or a clinical psychologist. Normally, at least one member of the board shall be either a psychiatrist or a clinical psychologist.” R.C.M. 706(c)(1). The board is required to answer at least the following four questions:
(A) At the time of the alleged criminal conduct, did the accused have a severe mental disease or defect?
(B) What is the clinical psychiatric diagnosis?
(C) Was the accused, at the time of the alleged criminal conduct and as a result of such severe mental disease or defect, unable to appreciate the nature and qualify or wrongfulness of his or her conduct?
(D) Is the accused presently suffering from a mental disease or defect rendering the accused unable to understand the nature of the proceedings against the accused or to conduct or cooperate intelligently in the defense?
R.C.M. 706(c)(2).

. It is important to note that, while conclusions of mental health experts can raise matters incon *679 sistent with a plea of guilty, they cannot be used to salvage an otherwise improvident plea. In the context of a guilty plea, lack of mental responsibility must be treated as any other defense raised by the evidence. The military judge must explain the defense to the accused and question the accused about its applicability. See Harris, 61 M.J. at 398 (holding appellant’s guilty pleas improvident because the military judge failed to discuss the affirmative defense of mental responsibility with appellant, despite the findings of two R.C.M. 706 boards that appellant was mentally responsible for the offenses). Thus, even if a sanity board has concluded that an accused was mentally responsible for the offenses, his plea of guilty would still be improvident if the defense was raised during the proceedings and the inconsistency was not resolved by the military judge through discussions with the accused. See id. If the accused does not disclaim the defense and provide facts that demonstrate why it is not available to him, the military judge should reject the plea of guilty. R.C.M. 910(e) discussion.