# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLOR, POND, and STEELE
Appellant Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist QUANTIQUE S. REESE**
**United States Army, Appellant**

ARMY 20240013

Headquarters, 25th Infantry Division and U.S. Army Hawaii
Rebecca L. Farrell, Military Judge
Colonel Christopher E. Martin, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Lieutenant Colonel Robert D. Luyties, JA; Captain Emily R. Ittner, JA (on brief); Colonel Frank E. Kostik Jr., JA; Major Kelsey Mowatt-Larssen, JA; Captain Emily R. Ittner, JA (on reply brief); Colonel Frank E. Kostik Jr., JA; Lieutenant Colonel Kyle C. Sprague, JA; Major Peter M. Ellis, JA; Captain Emily R. Ittner, JA (on brief in response to specified issue).

For Appellee: Colonel Richard E. Gorini, JA; Major Isaac J. Dickson, JA (on brief); Colonel Richard E. Gorini, JA; Major Elizabeth G. Van Dyck, JA; Captain Nicholas A. Schaffer, JA (on brief in response to specified issue).

29 May 2026

------------------------------
MEMORANDUM OPINION
------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

POND, Senior Judge:

A military judge, sitting as a general court-martial, found appellant guilty, pursuant to his pleas, of two specifications of attempted lewd acts with a child, in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (2019)

[UCMJ]. The military judge sentenced appellant to a dishonorable discharge, four months of confinement,[1] and reduction to the grade of E-1.

On appeal before this court, appellant argues the military judge erred in denying his defense counsel's request for an inquiry into his mental capacity and mental responsibility under Rule for Courts-Martial [R.C.M.] 706. This court specified whether appellant's subsequent unconditional guilty plea waived that issue. We conclude that it did not. We further conclude the military judge abused her discretion by applying a higher legal standard than what R.C.M. 706 requires.[2]

## BACKGROUND

After arraignment, appellant's trial defense counsel filed a motion for the military judge to order a R.C.M. 706 inquiry into appellant's mental capacity to stand trial and mental responsibility for the charged offenses. The defense asserted appellant was suffering from "cognitive difficulty, poor social functioning, and limited verbal cognition" and they had concerns about appellant's ability to understand the legal advice given to him. The government opposed the motion.

In a written ruling, the military judge denied the defense's request, concluding it was frivolous. The military judge stated that only a licensed medical professional could diagnose appellant with "cognitive difficulty, poor social functioning, and limited verbal cognition." And because defense counsel had presented neither documentary nor testimonial evidence of these "diagnoses"—and failed to demonstrate that they had reviewed appellant's medical or mental health records to establish appellant was suffering from these diagnoses at the time of the offense or that he was unable to participate in his defense—the military judge determined there was no credible evidence for the court to base its decision.[3] Rather, the military judge was persuaded by the government's response, including evidence of appellant's CID interview, which she concluded demonstrated by a "preponderance of the evidence" that appellant understood the wrongfulness of his actions and possessed the ability to understand and exercise his legal rights. The military judge acknowledged the possibility that appellant's competency had

---

[1] The military judge sentenced appellant to four months of confinement for each specification to be served concurrently.

[2] Because of our resolution of this error, we do not address the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] The military judge stated either the information did not exist or it was withheld from the court for purposes of the motion.

declined since the interview but found there was no substantiating evidence of that fact.

Less than two weeks later, the defense filed a motion for reconsideration, which the government opposed. In support of its motion, the defense submitted appellant's Soldier Talent Profile, reflecting an Armed Services Vocational Aptitude Battery (ASVAB) score of 33,[4] and memoranda summarizing counsel's interviews of three witnesses: (1) appellant's first-line supervisory noncommissioned officer (NCO); (2) a chaplain who regularly met with appellant; (3) and appellant's pastor who interacted with him daily.

Appellant's first-line supervisor informed defense counsel that appellant had difficulty understanding tasks and was sometimes unable to follow instructions. He stated appellant was a "little slow, needed explicit guidance, and seem[ed] out of it" since the case started, and that appellant "has always been like that." Appellant's pastor stated he was "slower than the average person to understand what was being said" and "struggle[d] to understand common social cues." When the pastor played board games with appellant, appellant had difficulty understanding the strategies of the game. The pastor also informed defense that appellant "struggled with basic everyday understanding." Regarding the legal process, the pastor stated appellant "simply didn't understand the gravity of what was happening." The chaplain described appellant's ability to understand the pending court-martial, stating "it's going over his head" and that appellant "didn't seem mentally all there." The chaplain stated, at one point, appellant told him he believed the chaplain "was a spy even after he explained who he was and what he does."

The military judge denied the defense's request for reconsideration, again concluding that defense counsel did not carry its low burden when it provided no evidence of the existence of a diagnosis. The military judge further stated the defense provided no evidence they reviewed appellant's medical records to confirm or deny the existence of any diagnosis or that they had "submitted [appellant] to even a basic session with a professional to have a good faith basis to make [their] assertion." The military judge concluded the government's evidence—specifically, appellant's CID interview and the text messages that formed the basis of the charged offenses—demonstrated "by a preponderance of the evidence" both that appellant understood his actions and any potential wrongfulness at the time of the offense and that appellant possessed the ability to understand and exercise his legal rights. The military judge relied first upon appellant's acknowledgment that he had "f***ed up" and that this was "serious" before he invoked his rights and terminated the interview with CID. Second, the military judge found that appellant's interview "showed no lack of verbal cognition or cognitive difficulty, rather it showed he clearly understood his legal rights and had the cognitive ability to exercise them."

---

[4] In its motion, defense submitted this score was two points above the minimum score of 31 to join the Army.

Regarding the three witnesses, the military judge found first there was no evidence the chaplain understood or could effectively and intelligently explain the court-martial process to appellant, which is the responsibility of an attorney. Second, the chaplain did not expound upon what appellant meant when he accused him of being a "spy," when it is common for those untrained in ethics or privileges to not understand the nature of confidential communications. Third, the military judge found the pastor's observation of appellant's inability to understand board game strategies uncompelling. She otherwise did not address the other observations made by the pastor and the chaplain. The military judge was also unpersuaded by the supervisor's observation that appellant failed to execute tasks and needed repeated directions, which she found did not rise to the low threshold required for an inquiry under R.C.M. 706. Finally, the military judge found nothing from appellant's ASVAB scores indicating he had an inability to understand or participate in his defense.

After the military judge denied the defense's second request for an R.C.M. 706 inquiry, appellant pleaded guilty unconditionally to the charged offenses. There was no plea agreement, but the parties, "with the express consent" of appellant, entered a stipulation of fact wherein appellant disclaimed any defenses and agreed he had no lawful justification or excuse.[5] After conducting a providence inquiry, which included a discussion of the elements of the offense, the military judge found appellant's plea was made voluntarily and with full knowledge of its meaning and effect.

After findings, the defense's presentencing case included appellant's school reports, testimony from his father, and appellant's unsworn statement—which, in the aggregate, indicated that appellant had autism, issues with understanding and receiving information, and learning disabilities while attending school, which required special educational resources. The military judge did not reopen the providence inquiry to inquire about the defense of mental responsibility or appellant's mental capacity to stand trial.

---

[5] This provision included the following specific language: "The Accused disclaims the existence of any defense to the charges against him. The Accused specifically disclaims any defense that negates his intent to commit the crimes detailed in the charges, including entrapment. The Accused also agrees that his actions were not protected communications under the Constitution. The Accused was well aware of the nature and illegality of his actions at the times of their commission and thereby admits his guilt freely before the Court."

## LAW AND DISCUSSION

*Whether Waiver Applies to an R.C.M. 706 Inquiry Request*

Waiver is a question of law which we review de novo. *United States v. Cook*, 86 M.J. 104, 108 (C.A.A.F. 2025). "Waiver can occur either by a party's intentional relinquishment or abandonment of a known right or by operation of law." *United States v. Day*, 83 M.J. 53, 56 (C.A.A.F. 2022) (citation omitted). A waiver by operation of law occurs when a procedural rule provides that an objection is automatically waived upon the occurrence of a specified event, and that event has occurred. *Id.*

An unconditional guilty plea generally waives "all defects which are neither jurisdictional nor a deprivation of due process of law," *United States v. Malone*, 86 M.J. 297, 2026 CAAF LEXIS 62, at *8 (C.A.A.F. 20 Jan. 2026) (citation and internal quotation marks omitted), whether or not the objection or issue was previously raised. *United States v. Bradley*, 68 M.J. 279, 281 (C.A.A.F. 2010); *see also* R.C.M. 910(j). But "the waiver doctrine is not without limits." *Bradley*, 68 M.J. at 281. And in this case, the general rule does not extend to an appellant's competence or mental capacity to stand trial.[6]

The Supreme Court has "repeatedly and consistently recognized that the criminal trial of an incompetent defendant violates due process." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (citations and internal quotation marks omitted). That principle reflects a basic requirement of fairness: an accused must be able to understand the proceedings and assist in his defense. *Drope v. Missouri*, 420 U.S. 162, 171 (1975). Without competence, an accused "may be unable to exercise [those] 'rights deemed essential to a fair trial.'" *Cooper*, 517 U.S. at 364 (quoting *Riggins v. Nevada*, 504 U.S. 127, 139 (1992) (Kennedy, J., concurring in judgment)). These include the "'profound choice' of whether to plead guilty, whether to waive the privilege against compulsory self-incrimination by testifying, whether to waive a jury trial, whether to waive the right to confrontation by forgoing cross-examination of the government's witnesses—and, with his counsel's assistance, the right "to make myriad smaller decisions concerning the course of his defense." *Cooper*, 517 U.S. at 349; *see also Drope*, 420 U.S. at 171 ("the prohibition is fundamental to an adversary system of justice.") (citation omitted). Because prohibiting the trial of an incompetent defendant "is fundamental to an adversary system of justice," *Drope*, 420 U.S. at 171, procedural due process guarantees an adequate hearing to determine competency when the issue is raised. *Pate v. Robinson*, 383 U.S. 375, 384, 386 (1966) (holding a defendant's

---

[6] "Rules for Courts-Martial use the term 'mental capacity' to refer to what civilian courts call competency." *United States v. Collins*, 60 M.J. 261, 265 n.4 (C.A.A.F. 2004) (citation and internal quotation marks omitted).

"constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial."). In *Robinson*, the Supreme Court also rejected the notion that competency can be waived. *Id.* at 386. As the Court observed, "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Id.* Although appellant in this case pleaded guilty—unlike the defendant in *Robinson*—the constitutional requirement is unchanged, as the standard for mental capacity to plead guilty is identical to the standard for mental capacity to stand trial. *See Godinez v. Moran*, 509 U.S. 389, 397-98 (1993).

For servicemembers subject to courts-martial, Congress and the President have provided safeguards and procedures in Article 76b, UCMJ and R.C.M. 909 to protect a mentally incompetent accused from standing trial. R.C.M. 909 provides "[n]o person may be brought to trial by court-martial if that person is presently suffering from a mental disease or defect rendering him or her mentally incompetent to the extent that he or she is unable to understand the nature of the proceedings against them or to conduct or cooperate intelligently in the defense of the case." While an accused is presumed to be competent, when the issue of competency is raised, R.C.M. 909 provides procedures to determine the capacity of an accused to stand trial. *See* R.C.M. 909(b)-(e). These procedures include an incompetence determination hearing conducted by the military judge either *sua sponte* or at the request of either party. In determining the mental capacity of the accused to stand trial at such a hearing, the military judge applies a preponderance of the evidence standard. *See* R.C.M. 909(e)(2). The rule, however, typically requires the completion of an inquiry under R.C.M. 706 as a precursor to the hearing. Subsection (d) of R.C.M. 909 provides that a military judge shall conduct a hearing if an R.C.M. 706 inquiry "concludes that an accused is suffering from a mental disease or defect that renders him or her mentally incompetent to stand trial." *See also United States v. English*, 47 M.J. 215, 217 (C.A.A.F. 1997) (outlining a "six-step process for assessing questions regarding the mental health of an accused" beginning with R.C.M. 706).

An R.C.M. 706 inquiry may be requested whenever there is reason to believe the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial. R.C.M. 706(a). The rule does not limit the persons authorized to make such a request solely to defense counsel. Rather, R.C.M. 706(a) provides "any commander who considers the disposition of charges . . . preliminary hearing officer, trial counsel, defense counsel, military judge, or member" may submit a request. Our superior court has stated that a request for an R.C.M. 706 inquiry "should normally be granted if it is made in good faith and is not frivolous." *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008) (citing *United States v. Nix*, 15 U.S.C.M.A. 578, 582, 36 C.M.R. 76 (1965)). The President has further provided in Military Rule of Evidence (M.R.E.) 302 that an accused's statements made during an R.C.M. 706 mental examination are privileged. The drafters of M.R.E. 302 recognized the uniquely military concern that prosecutors could retrieve any records

of medical diagnoses or treatment because "there is generally no doctor-patient privilege in the military." *United States v. Clark*, 62 M.J. 195, 198 (C.A.A.F. 2005). Thus, this rule "guarantees a servicemember a right to confidentiality comparable to a civilian under Fed. R. Crim. P. 12.2(c)(4)." *Id.*

R.C.M. 706 and M.R.E. 302 reflect that "mental health issues bear special status" in the military. *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007); *see also United States v. Navarette*, 81 M.J. 400, 404 (C.A.A.F. 2021). "From early times, military law [has] accord[ed] a 'preferred rating' to questions affecting the accused's sanity." *United States v. Lilly,* 25 M.J. 403, 406 (C.M.A. 1988) (citations and internal quotation marks omitted); *see also United States v. Massey*, 27 M.J. 371, 373 (C.M.A. 1989) ("we perceive no intent by Congress to change the principle that [m]ilitary law accords a 'preferred rating' to questions affecting the accused's sanity." (citations and internal quotation marks omitted)). "This status in part reflects the recognition that combat and other operational conditions may generate or aggravate certain mental health conditions, such as post-traumatic stress disorder." *Shaw*, 64 M.J. at 462.

In reviewing whether an appellant has been denied a review of his mental capacity to stand trial, it is necessary to review the decision whether to deny a request for an R.C.M. 706 inquiry. "When a defense counsel requests a sanity board based on a non-frivolous, good faith claim that an accused lacks the mental capacity to stand trial, the military judge cannot rule finally on that issue pursuant to R.C.M. 909 without first considering the report of a sanity board conducted in accordance with R.C.M. 706 or an equivalent forensic mental evaluation." *United States v. Collins*, 41 M.J. 610, 612 (Army Ct. Crim. App. 1994) (citation omitted);[7] *see also English*, 47 M.J. at 217, cited *supra*. While the findings of an R.C.M. 706 inquiry do not ultimately resolve the issue, they act as a prerequisite "provid[ing] information for the final decision maker." *United States v. McGuire*, 63 M.J. 678, 680-81 (Army Ct. Crim. App. 2006) (citing R.C.M. 909(c)-(e); R.C.M. 916(k)).

Here, trial defense counsel twice requested a R.C.M. 706 inquiry into both appellant's mental responsibility and mental capacity to stand trial, adequately raising the issue to the military judge. Therefore, the question of waiver in this case depends upon whether any subsequent action or events waived the issue, either by operation of law or intentional relinquishment.

---

[7] Much of our jurisprudence refers to inquiries under R.C.M. 706 as "sanity boards." This terminology stems back to the 1951 Manual which defined "Insanity" as a person who either "lacked mental responsibility at the time of the offense" or "lacks the requisite mental capacity at the time of trial." *Manual for Courts-Martial, United States* (1951 ed.) [*MCM*, 1951], ¶ 120.

First, there is an important distinction between an accused's mental capacity to stand trial (implicating a due process right) and an accused's mental responsibility for the offense (implicating a potential affirmative defense under R.C.M. 916(k)). Had appellant's trial defense counsel only made a showing calling into question appellant's mental responsibility at the time of the alleged crime—i.e., his ability "to appreciate the nature and wrongfulness of his acts," *United States v. Riddle*, 67 M.J. 335, 339 (C.A.A.F. 2009)—appellant's unconditional guilty plea may very well have extinguished the issue for further review. *But see Mackie*, 66 M.J. at 200 (affirming decision to order an R.C.M. 706 inquiry into appellant's mental capacity *and* mental responsibility where military judge erroneously denied the request at trial and appellant subsequently pleaded guilty). In this case, defense requested an inquiry into both, squarely placing the issue of mental capacity before the military judge.

Because mental capacity is a fundamental due process right, an unconditional guilty plea does not waive the issue by operation of law. Under the current version of R.C.M. 910(j), a guilty plea "waives any objection, whether or not previously raised" relating to "the factual issue of guilt" and "any non-jurisdictional defect as to the offense(s)."[8] That waiver language, however, does not encapsulate the issue of an accused's mental capacity to stand trial. Mental capacity is an interlocutory factual issue relating to the ability to participate in the proceedings, *see* R.C.M. 909(e)(1), rather than relating to the factual issue of guilt. It is not a non-jurisdictional defect, but rather a due process right to a fair trial. R.C.M. 910(j) also does not waive challenges to the plea's acceptance.

Separately, waiver did not arise through counsel. The decision whether to plead guilty is personal to the accused, meaning it is a decision that only the accused can make. "Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.' *Gonzalez v. United States*, 553 U.S. 242, 248 (2008). Some decisions, however, are reserved for the client—notably, *whether to plead guilty*, waive the right to a jury trial, testify in one's own behalf . . . ." *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)) (emphasis added). Because the decision to plead guilty rests solely with appellant, any doubt as to his mental capacity to stand trial necessarily calls into question his mental capacity to enter a knowing and voluntary plea. And "if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247

---

[8] The language of the rule was amended by Executive Order, effective 28 July 2023, before appellant's court-martial. Executive Order 14,103, 88 Fed. Reg. 50, 537 (July 28, 2023). The amendment added the words, "and any non-jurisdictional defect as to the offense(s)."

(1969).[9] Because the right at issue is one of due process and the decision to plead is personal to the accused, the issue of mental capacity was not waived through counsel.

The government argues that under *Malone*, cited *supra*, appellant has not claimed ineffective assistance of counsel and, in the absence of that claim, we presume trial defense counsel acted competently in making a deliberate decision to later waive review of the R.C.M. 706 motions by allowing their client to plead guilty. While we agree with the longstanding principle that counsel are presumed competent in the absence of claims to the contrary, *see e.g., United States v. Shaw*, 64 M.J. 460, 463 (C.A.A.F. 2007) (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)), the government's argument fails to account for the fact that the decision whether to plead guilty or not guilty is the province of an accused alone. A competent counsel may very well advise his or her client against pleading guilty, but regardless of the advice, the defense counsel is ultimately bound by the client's decision. Here, once the military judge denied the motions for an R.C.M. 706 inquiry, appellant's trial defense counsel could not then dictate appellant's plea, nor would we say they were ineffective for failing to preserve the competency issue by "permitting" appellant to plead guilty when that decision is not theirs to make.

The government's argument, however, implicates defense counsel's ethical obligations when representing a client who is incompetent to stand trial. Following the government's logic, one must assume that competent defense counsel would not facilitate appellant's guilty plea, including signing a stipulation of fact, if they genuinely believed appellant lacked the mental capacity to stand trial. There was no plea agreement in this case. Defense counsel, however, agreed to a stipulation of fact "with the consent of [appellant]," which included an express disclaimer of any legal justification, excuse, or defense to the charges. As previously noted, however, there is a difference between the defense of mental responsibility and the due process right of competence to stand trial. Thus, this language in the stipulation of fact, by its terms, applied to the defense of mental responsibility but not to appellant's mental capacity to stand trial.[10]

---

[9] Because a "plea of guilty waives a number of important constitutional rights . . . the waiver of these rights must be an informed one." *United States v. Harris*, 61 M.J. 391, 398 (C.A.A.F. 2005). Consequently, an accused cannot "make an informed plea without knowledge that he suffered a severe mental disease or defect at the time of the offense." *Id.* (granting a petition for new trial where post-conviction evidence demonstrated appellant suffered from a severe mental disease or defect at the time of the offenses).

[10] In the absence of a plea agreement, we can only guess as to the reason for agreeing

(continued. . .)

Next, this line of reasoning presumes that defense counsel possessed more than the non-frivolous, good faith basis required under *Nix* to question appellant's competence. And where a military judge has denied the defense counsel the means under the Rules for Courts-Martial to further inquire into their client's mental capacity, it would be incongruent to then use the defense counsel's subsequent actions here as proof that they no longer held any doubts as to appellant's competence—when they were previously denied the means to dispel that doubt. We also note that Rule 1.14 of Army Regulation 27-26, Rules of Professional Conduct for Lawyers (26 Mar. 2025) [AR 27-10] provides, "When a client's capacity to make adequately considered decision in connection with a representation is diminished whether because of minority, mental impairment, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client." So, in the absence of clear evidence that the appellant was so severely incapacitated that he had no power to make legally binding decisions, competent defense counsel would have continued their representation of appellant to include effectuating his decision to plead.

There were conceivably other tacks defense counsel could have taken if they had serious concerns about appellant's competence such as requesting an R.C.M. 909 hearing or requesting expert assistance to confidentially evaluate appellant. But defense counsel cannot be faulted for failing to demand a hearing under R.C.M. 909 to determine appellant's mental capacity after the military judge twice denied their requests for an inquiry under R.C.M. 706. Without the method to obtain the basis to request an incompetence determination hearing under R.C.M. 909—that is, the conclusion from an R.C.M. 706 inquiry that an accused is, in fact, suffering from a mental disease or defect that renders him mentally incompetent to stand trial, *see* R.C.M. 909(d)—defense counsel could have reasonably determined that a request for an R.C.M. 909 hearing would have been futile.

Similarly, in regards to a request for expert assistance in evaluating appellant, which would have provided confidentiality, if the military judge determined defense counsel failed to meet the bar of a non-frivolous good faith basis for an R.C.M. 706 inquiry, defense may have reasonably concluded they would be unable to meet the

---

(. . . .continued)
to enter a stipulation of fact. Such a stipulation, however, would help ensure an accused is found provident, particularly if defense counsel had concerns about a client's mental capacity and ability to understand and respond to the military judge's questioning during the providence inquiry. *See e.g., United States v. Whitaker*, 72 M.J. 292 (C.A.A.F. 2013) (allowing military judges to consider the stipulation of fact in determining whether an accused is provident). However, if there was a question whether the accused possessed the mental capacity to stand trial, there would also be a question of his mental capacity to agree to the statements contained in the stipulation of fact.

threshold to grant a request for an expert assistant. Nevertheless, defense counsel still retained ethical obligations of candor to the court and reasonable diligence—including the duty to investigate appellant's medical history and background, assuming the client consents to disclosing this information, and to renew an objection based upon new evidence or information. And as the military judge correctly noted, appellant's physical characteristics, such as demeanor, bearing, or sobriety, which are observable to anyone, are not attorney-client privileged. *United States v. Navarette*, 79 M.J. 123, 127 n.6 (C.A.A.F. 2019).[11] In analyzing this issue, however, we are reminded that "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).[12]

Regardless, there is no ineffective assistance claim raised, and as the government argued, in the absence of such a claim, we will presume that counsel were competent in requesting the military judge order an R.C.M. 706 inquiry and, after those requests were denied, were also competent in effectuating their client's expressed desire to subsequently plead guilty. In light of the Supreme Court precedent in *Robinson*, our superior court's decision in *Mackie*—which did not apply waiver where appellant pleaded guilty—and the plain language of R.C.M. 910(j), competent counsel may have reasonably concluded that the issue of mental capacity was preserved and proceeded under the landscape they then found themselves. We will, therefore, not rely on defense counsel's actions here to find waiver of appellant's mental competence.

This court also cannot rely on appellant's demeanor at trial to resolve the issue of mental capacity. *See Robinson*, 383 U.S. at 386. "While [the accused's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." *Id.* We note that the

---

[11] Rule 1.14 of AR 27-26 provides that counsel are "impliedly authorized" to reveal information about a client under Rule 1.6(a), governing confidentiality, "but only to the extent reasonably necessary to protect the client's interest." We note at sentencing, trial defense counsel presented evidence that appellant had been diagnosed with autism as a child. We also note, however, that the military judge did not reopen the providence inquiry to inquire into mental capacity or mental responsibility when presented with this information in light of the defense's request for an R.C.M. 706 inquiry. *Cf. United States v. Riddle*, 67 M.J. 335, 339 (C.A.A.F. 2009) (finding reference to a bipolar disorder, with no further evidence that the condition affected the accused's mental responsibility, at most raised only the mere possibility of a defense).

[12] Separately, we recognize that a defense counsel's concern for their client's mental capacity to stand trial might be at odds with a client's perception of their own competence.

facts presented in this case raising a question of appellant's mental capacity are not as egregious as some of the facts arising in other cases, such as those presented in *Robinson*, which addressed a judge's *sua sponte* duty to order a sanity hearing. But the question of waiver does not depend on the severity of the potential mental disease or defect. Rather, the question depends upon whether the issue was adequately presented to the military judge. Once a "non-frivolous, good faith" basis to question an accused's competency is established, the initial question of the existence and severity of any such mental disease or defect is "a matter for consideration by highly trained medical personnel," *Nix*, 15 U.S.C.M.A. at 582-83, not counsel and not the military judge. Finally, if we find that waiver applies in this case, we must necessarily find it applies in all cases and to all appellants who adequately raise the issue of mental capacity at trial and are denied further examination of that issue.[13]

For all these reasons, we hold appellant's guilty plea did not waive review of the military judge's denial of the R.C.M. 706 request into his mental capacity to stand trial.

*Whether it was error to deny the R.C.M. 706 inquiry request*

Determining that waiver does not apply, we must determine whether it was error to deny the defense's request. This court reviews a military judge's decision to grant or deny a motion for an R.C.M. 706 inquiry for an abuse of discretion. *Mackie*, 66 M.J. at 199. A military judge abuses her discretion if (1) the findings of fact are clearly erroneous; (2) the decision was influenced by an erroneous view of the law; or (3) the application of correct legal principles to the facts is clearly unreasonable. *Id.*

"When either the mental responsibility or mental capacity of an accused is an issue, it must be addressed in the first instance through a mental examination conducted by a board of mental health experts" under R.C.M. 706. *United States v. McGuire*, 63 M.J. 678, 680 (Army Ct. Crim. App. 2006). A request for an R.C.M. 706 inquiry need only be made in good faith and must not be frivolous. *Nix*, 15

---

[13] In *Robinson*, the Supreme Court applied the state's statutory standard of a "bona fide doubt" as to competence. 383 U.S. at 378, 385. Notably, the Supreme Court did not specify whether the state's statutory procedures were constitutionally mandated but rather concluded that "the statutory procedure, if followed, was constitutionally adequate." *Drope*, 420 U.S. at 172. Other jurisdictions have adopted a similar "bona fide doubt" standard. *See e.g., Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980); *Piggee v. Muniz*, 2024 U.S. App. LEXIS 4310 (9th Cir. 2024); *United States v. Nademus*, 2026 U.S. App. LEXIS 10248 (11th Cir. 2026). In the military, however, given the preferential treatment of the mental status of an accused, we see no reason to deviate from the procedures and standards set forth by Congress, the President, and our superior court.

U.S.C.M.A. at 582. "Good faith" does not require "any particular measurement of merit" or a "justiciable basis for a particular claim or motion." *United States v. Pattin*, 50 M.J. 637, 640 (Army Ct. Crim. App. 1999). Further, "a military judge's disbelief of the facial, factual allegations contained in the motion does not warrant denial for lack of good faith." *Id.* A motion which is "frivolous" could be defined as "abusive, egregious, or utterly implausible" or "some level beneath meritless." *Id.* Both concepts—"good faith" and "frivolous"—suggest "an evidentiary standard involving such a lack of credible evidence or inferences that the ultimate fact or asserted conclusion cannot be reliably determined." *Id.* This relatively low threshold does not necessitate proof of a formal diagnosis, corroborating medical records, or a preponderance of the evidence. Rather than proving the accused's lack of mental capacity, the defense need only show that the accused's ability to participate in the proceedings is "fairly debatable." *Navarette*, 81 M.J. at 405.

Here, the defense met that standard. After the military judge denied the first request for an R.C.M. 706 inquiry, defense counsel proffered evidence from three witnesses who observed that appellant struggled with "basic everyday understanding," to include what was being said, appeared mentally disengaged—described as "out of it" and not "mentally all there"—and thought one witness was a "spy from the Government" even after he explained who he was and what he does. Trial defense counsel also represented that they had concerns about appellant's ability to understand the legal advice given to him. Additionally, appellant's military record reflected a well below average Armed Services Vocational Aptitude Battery (ASVAB) score combined with his observed struggles in "everyday understanding" suggested a cognitive impairment that could hinder appellant's ability to consult with counsel. The evidence was not overwhelming. But it was sufficient to raise a non-frivolous, good-faith question as to appellant's mental capacity to participate in the proceedings against him.[14]

The military judge, however, denied the defense request for two principal reasons: (1) due to the absence of a confirmed diagnosis and (2) due to her reliance on appellant's CID interview to conclude "by a preponderance of the evidence" that

---

[14] We also note that in comparison to *Pattin*, where the court found the trial defense counsel request for an R.C.M. 706 inquiry was clearly subterfuge to delay the trial, here, defense counsel filed their motions articulating their concerns of appellant's competency a month before motions were due and nearly four months before the scheduled trial date—as reflected in the military judge's pretrial order. *Cf. Pattin*, 50 M.J. at 641 (finding defense counsel's "motion for a sanity board was merely a frivolous attempt to bootstrap a trial delay through the mechanism of a sanity board").

appellant was able to understand and exercise his legal rights.[15] Both rationales reflect legal error.

First, R.C.M. 706 does not necessarily require the defense to produce evidence of a diagnosis before an inquiry may be ordered. To the contrary, the purpose of the inquiry is to determine whether a mental disease or defect exists. There often may be times where an accused's mental illness remains undiagnosed. That is not to say that a defense counsel need not disclose a diagnosis if it exists, especially if it will assist the military judge in determining whether an R.C.M. 706 inquiry is required. *See e.g.,* Rule 1.14 of AR 27-26, cited *supra*. But requiring defense counsel to submit their client to an evaluation before requesting an inquiry under R.C.M. 706 undermines the purpose of the rules and is counter to the confidentiality requirements prescribed by the President in M.R.E. 302, which "facilitates the important task of limiting access to privileged information." *United States v. Jancarek*, 22 M.J. 600, 603 (A.C.M.R. 1986); *see also English*, 47 M.J. at 218-19.

Second, the military judge improperly relied upon her own assessment of the evidence of appellant's offense—to include appellant's CID interview—to conclude that an R.C.M. 706 inquiry was unwarranted. That assessment would be called for during a subsequent R.C.M. 909 hearing, but doing so at this preliminary stage usurps the function of the R.C.M. 706 board. The purpose of the R.C.M. 706 inquiry is to obtain expert "detection of mental disorders 'not . . . readily apparent to the eye of the layman.'" *Nix*, 15 U.S.C.M.A. at 583; *see also United States v. Sims*, 33 M.J. 684, 686-87 (A.C.M.R. 1991) ("only those physicians, psychiatrists, and clinical psychologists listed in R.C.M. 706(c)(1) may *initially* answer the specific questions in R.C.M. 706(c)(2)(A-D)."). "When the claim of insanity is not frivolous, to allow the court to determine that there is no cause to believe that an accused may be insane or otherwise mentally incompetent would be inconsistent with" that purpose. *Nix*, 15 U.S.C.M.A. at 583 (citation and internal quotation marks omitted). As this court found in *Sims*, a military judge's attempt to personally evaluate an accused's mental condition is an inadequate substitute to "ordering a mental examination by the appropriate mental health professionals." 33 M.J. at 687. That same principle applies here.

Finally, the military judge applied an incorrect legal standard. By concluding the evidence established appellant's mental responsibility and mental capacity "by a preponderance of the evidence," she effectively applied the standard governing a competency hearing under R.C.M. 909. That is not the standard for ordering an R.C.M. 706 inquiry, which is markedly lower.

---

[15] The military judge also relied upon evidence of the text messages that initiated the alleged offense to show appellant understood the wrongfulness of his actions.

Because the military judge required more than a non-frivolous, good faith basis to question appellant's mental capacity, she applied an erroneous view of the law and thereby abused her discretion in denying defense counsel's second request for an R.C.M. 706 inquiry.

The Supreme Court has "emphasized the difficulty of retrospectively determining an accused's competence to stand trial." *Robinson*, 383 U.S. at 387 (citing *Dusky v. United States*, 362 U.S. 402 (1960)). But it is not an impossible endeavor. In *United States v. Wingo*, the 11th Circuit remanded the case to the district court to "determine whether Wingo's competency can be evaluated *nunc pro tunc*, and if so, for an assessment of his competency at the time of his guilty plea and sentencing." 789 F.3d 1226, 1239 (11th Cir. 2015). Similarly, the Second Circuit remanded a case to the district court to determine whether it could make a retrospective competency determination, acknowledging that "nunc pro tunc competency evaluations are disfavored," but that the district court was in the best position to determine whether it could make such a retrospective determination. *United States v. Arenburg*, 605 F.3d 164, 171-72 (2d Cir. 2010) (citation and internal quotation marks omitted).

We conclude that it is necessary to order a *DuBay* hearing in this matter. *See United States v. Dubay*, 17 C.M.A 147 (1967). The *DuBay* military judge will order an R.C.M. 706 inquiry before making a factual determination whether appellant's mental capacity to stand trial can be evaluated retrospectively—at the time of his guilty plea—and if so, whether appellant possessed the mental capacity to stand trial at the time of his proceedings.

## CONCLUSION

We return the record of trial to The Judge Advocate General for remand to an appropriate convening authority to order a hearing pursuant to Article 66(f)(3), UCMJ. (*Dubay* codified). After the conclusion of these proceedings, the military judge's findings of fact and conclusions of law shall be returned to this court for further review under Article 66, UCMJ.

Chief Judge FLOR and Judge STEELE concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court

15